IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISON

| | |
|---|---|
| LUMONT JOHNSON & ANTHONY ROSS, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF ROCKFORD, DOUG PALMER, DOMINIC | ) |
| IASPARRO, JOSEPH STEVENS, JAMES RANDALL, | ) |
| SCOTT MASTROIANNI, THEO GLOVER, KURT | ) |
| WHISENHAND, TORRY REGEZ, GREGORY | ) |
| LINDMARK, AND UNKNOWN EMPLOYEES OF | ) |
| THE CITY OF ROCKFORD, | )    JURY DEMAND |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, LUMONT JOHNSON & ANTHONY ROSS, by their undersigned attorneys, complain of Defendants, CITY OF ROCKFORD, DOUG PALMER, DOMINIC IASPARRO, JOSEPH STEVENS, JAMES RANDALL, SCOTT MASTROIANNI, THEO GLOVER, KURT WHISENHAND, TORRY REGEZ, GREGORY LINDMARK, AND UNKNOWN EMPLOYEES OF THE CITY OF ROCKFORD as follows:

### Introduction

1.   Plaintiffs Lumont Johnson and Anthony Ross spent 11 years in prison for the murder of Demarcus Hanson that they did not commit.

2.   Mr. Johnson and Mr. Ross were convicted after the Defendants engaged in a tapestry of egregious wrongdoing, including fabricating statements, threatening witnesses and

withholding highly exculpatory evidence – including a third party confession of the real killer – in an effort to shortcut the investigatory process and frame Plaintiffs for a crime they did not commit.

3.   Never giving up on proving their innocence, Mr. Johnson and Mr. Ross filed post-conviction petitions.  During those proceedings, Defendant Doug Palmer came forward and confessed to a host of misconduct that violated Plaintiffs' right to due process – a confession that he has stood by despite being attacked by his former colleagues and threatened with perjury.

4.   Finally, the Defendants purposely ignored compelling evidence that two other individuals, Kefentse Taylor and Casel Montgomery, actually committed the shooting.  Taylor has since died.  Montgomery was confronted on the stand with his wrongdoing.  Rather than answer questions about his whereabouts on the night of the shooting, he invoked his Fifth Amendment rights because he had a legitimate concern that testifying would subject him to criminal liability for the Hanson murder.

5.   On March 19, 2013, after a lengthy evidentiary hearing at which Mr. Johnson and Mr. Ross presented overwhelming evidence of their innocence, Plaintiffs' convictions were finally reversed.  This lawsuit seeks to bring these injustices to light so that they never occur again.

## Jurisdiction and Venue

6.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(v).  The events giving rise to this complaint occurred in this judicial district.

## Parties

8.     Plaintiff Lumont Johnson is a 42-year-old resident of Rockford, Illinois.  Mr. Johnson is the father of two children.  He is currently working for the Rockford Register Star.

9.     Plaintiff Anthony Ross is a 34-year-old father and resident of Rockford, Illinois.  He is currently working for the Rockford Register Star.

10.     At all times relevant hereto, Defendants Doug Palmer, Dominic Iasparro, Joseph Stevens, James Randall, Scott Mastroianni, Theo Glover, Gregory Lindmark, Kurt Whisenhand and Torry Regez (hereinafter "Defendant Officers") were police officers in the Rockford Police Department.  All are sued in their individual capacities, and acted under color of law and within the scope of their employment during the investigation of the murder at issue.

11.  Defendant City of Rockford is an Illinois municipal corporation.  The City of Rockford is or was the employer of each of the Defendant Officers.

**The Crime**

12.  On April 14, 2002, eight-year-old Demarcus Hanson was killed by shots that were fired through a window in his grandmother Estella Dowthard's house.  Estella Dowthard called 911 at approximately 2:53 a.m. to report the shooting.

13.  According to the police, the shooting was a misfire; the shooters were aiming at Estella Dowthard's son, Alex Dowthard, but accidentally hit Demarcus Hanson.

**Plaintiffs' Innocence**

14.  Mr. Johnson and Mr. Ross had absolutely nothing to do with this heinous crime. In fact, they were nowhere near the house at the time it occurred.  Earlier in the night, Plaintiffs had been with their friend and eventual co-defendant, Tyjuan Anderson, visiting with friends and going to a nightclub.

15.  By the time of the shooting, all three men were back home: Mr. Johnson and Mr. Anderson were together at Mr. Anderson's house, and Mr. Ross was at his own home.

16.  Plaintiffs had strong alibi evidence. Mr. Johnson made several phone calls to his friend trying to find a place to stay that evening because he had had a fight with his

4

girlfriend. Those calls occurred between 2:46 a.m. and 2:53 a.m.

17. Mr. Ross was also at home when the shooting occurred, with his then-girlfriend Toni Gulley and their infant baby. When he arrived home, Gulley had just awoken to change their baby's diaper and feed her.

### The Police Investigation

18. There was never any physical evidence linking Plaintiffs to this crime. None of their fingerprints or DNA were found at the crime scene.

19. The Defendant Officers spoke to Plaintiffs on the day of the shooting. Mr. Ross, Mr. Johnson and Mr. Anderson learned that the police wanted to speak with them, and so each went to the police station and told the Defendant Officers about their whereabouts – and their alibi – the night before.

20. Mr. Johnson, Mr. Ross and Mr. Anderson were each released from custody that day.

21. On the day of the shooting, the Defendant Officers also spoke to the alleged target of the shooting, Alex Dowthard. Mr. Dowthard told the Defendants that he was not present at the time of the shooting and therefore, could not identify the shooters. Mr. Dowthard, however, admitted to possessing and shooting a firearm in a separate incident, and therefore was taken into custody on a parole violation.

22.   Lataurean Brown was with Mr. Dowthard at the time of the shooting.  As a result, the Defendant Officers also spoke with him. Mr. Brown also denied seeing the shooting or who the shooters were.

23.   Mr. Brown said that after partying earlier in the night with Mr. Dowthard, the two stopped at Estella's house to drop off Mr. Dowthard's gun and then drove to Concord Commons where they visited with Mr. Dowthard's cousin.

24.   With no credible suspect and no leads, the case went cold.  Yet the police were facing pressure to solve the crime.  The young age of the victim, and the tragic circumstances in which he died, at home sleeping in his bed, garnered media interest in the case.

### The Defendants' Misconduct

25.   Determined to close the Hanson murder, the Defendant Officers engaged in a campaign of misconduct to frame Plaintiffs for a crime they did not commit.  To do so, the Defendant Officers fabricated witness statements, coerced, hit and threatened witnesses, and withheld exculpatory evidence that not only would have explained why witnesses were falsely incriminating Plaintiffs, but also the identity of the real shooters.

26.   That misconduct was never disclosed to the prosecutor or Plaintiffs' defense attorneys.  Indeed, the

prosecutor stated that had he known of this egregious litany of
wrongdoing, it would have set off a cataclysmic chain of events,
unraveling the criminal investigation and Plaintiffs'
prosecution.

### *The Defendants Coerce the Key Witnesses and Fabricate Their Statements*

27.   The Defendant Officers coerced and fabricated the
statements of the State's two key witnesses.

28.   To move Lataurean Brown off of his statement that
he did not see the shooters, the Defendant Officers threatened
Mr. Brown.  They then fabricated a statement for him to sign
that would coincide with known facts about the shooting.

29.   Defendant Officers further suborned perjury by
instructing Mr. Brown to testify consistent with his police
statement at Plaintiffs' trials even though it was false and
fabricated.

30.   Alex Dowthard was similarly instructed.  When
questioned at the beginning of the investigation, Mr. Dowthard
repeatedly told the Defendant Officers that he did not see the
shooters.  Unsatisfied, the Defendant Officers threatened Mr.
Dowthard that if he did not change his story, they would keep
him imprisoned on a parole hold and bring additional criminal
charges against him.  The Defendant Officers also beat Mr.
Dowthard.

31.   Mr. Dowthard was then fed details of the crime. He falsely implicated Plaintiffs' in the crime.

32.   When confronted with evidence that he gave false statements and testimony about the shooting, Mr. Dowthard refused to answer and instead invoked his Fifth Amendment rights because he had a legitimate concern that testifying truthfully would subject him to criminal liability.

33.   To compound this unconstitutional conduct, the Defendant Officers buried evidence that both thoroughly impeached Mr. Brown's and Mr. Dowthard's false and fabricated statements that Plaintiffs committed the Hanson murder, and corroborated the fact that neither saw the offenders and could not identify them.

34.   In particular, the Defendant Officers spoke to Mr. Brown's cousin.  Mr. Brown's cousin told the Defendant Officers that right after the shooting, she spoke to Mr. Brown and Mr. Dowthard at Concord Commons.  Mr. Brown and Mr. Dowthard told her that they did not see who committed the crime.

35.   Notwithstanding the obvious importance and exculpatory value of this information, the Defendant Officers failed to disclose it to the prosecution or defense.

### *The Defendants Coerce and Threaten Other Witnesses*

36. The Defendant Officers similarly coerced other witnesses into giving false evidence and failed to disclose the fact of that coercion.

37. For example, the Defendant Officers threatened to take witness Carmen Hearns' children to the Department of Children and Family Services ("DCFS") and re-activate an old misdemeanor charge into a felony.

38. Even though Ms. Hearns told the Defendant Officers that she did not know anything about the shooting, the Defendant Officers told her that if she did not give them something, they were going to lock her up.

39. The Defendant Officers made good on their promise. After two days in jail, Ms. Hearns agreed to sign a fabricated statement that the Defendant Officers had pre-written, which falsely inculpated Plaintiffs in the crime.

40. Similarly, the Defendant Officers threatened and harassed Toni Gulley in an effort to destroy Mr. Ross' alibi. On that score, the Defendant Officers told Ms. Gulley that she must have been mistaken about the time that Mr. Ross came home, and that if she did not "cooperate" with the Defendant Officers, they would call DCFS and report her for child neglect. The Defendants further created false reports saying that Ms. Gulley could have been off at the time that Mr. Ross came home.

41. In addition, the Defendant Officers coerced and physically abused another witness when he threatened to change his story and expose the Defendant Officers' lies about how the Hanson shooting occurred. The Defendant Officers told him to testify consistent with those lies, and hit him and threatened to arrest his mother if he did not.

### *The Defendants Bury and Destroy Evidence*
### *Of the Identity of the Real Offenders*

42. Finally, the Defendant Officers unlawfully buried and destroyed any evidence demonstrating that two other people – Kefentse Taylor and Casel Montgomery – committed the crime. In fact, Defendant Lindmark told the Defendant Officers to make a liar out of anyone that pointed the finger at Taylor and Montgomery, or discredited the police version that Plaintiffs and Mr. Anderson committed the crime. The Defendant Officers did just that.

43. For example, the Defendant Officers received highly detailed and credible information from a witness who was with Mr. Taylor and Mr. Montgomery on the night of the shooting and who directly implicated Mr. Montgomery and Mr. Taylor in the crime.

44. Rather than investigate the information that the witness provided, the Defendant Officers met with the witness a second time. The Defendant Officers handed the witness a

statement that the Defendant Officers had already written out for the witness to sign that falsely recanted the information he had provided about Mr. Montgomery's and Mr. Taylor's culpability for the Hanson shooting.

45. To get him to sign off on that false and fabricated recantation, the Defendant Officers threated the witness. That misconduct was never disclosed to the prosecution or the defense.

46. Similarly, the Defendant Officers received information from another witness that Mr. Taylor had confessed to the Hanson shooting. Despite the obvious exculpatory value of that evidence, it was buried and never turned over to the prosecutor or to Plaintiff's criminal defense attorneys. The Defendant Officers told the witness that if his information was not about Plaintiffs or Mr. Anderson, then they did not want to hear it.

47. As a result, Plaintiffs were wrongfully prosecuted and convicted, and the real killers – Mr. Taylor and Mr. Montgomery – were never brought to justice for this crime.

### Plaintiffs' Wrongful Conviction

48. As a result of the Defendants' misconduct, Plaintiffs were convicted of first-degree murder and sentenced to 50 years in prison.

11

49.    During the trial, the Defendants not only suborned perjury – e.g., telling Mr. Brown and Mr. Dowthard to testify consistent with their false and fabricated statements – but also committed perjury themselves by lying about their conduct during the investigation, their role in procuring false statements, and about the reliability of various statements obtained in the investigation.

50.    Without the Defendants' misconduct, Plaintiffs would not have been prosecuted or convicted.

### Plaintiffs' Exoneration

51.    Never giving up hope and remaining steadfast in their protestations of innocence, the Plaintiffs filed post-conviction petitions challenging their convictions.

52.    During proceedings on those post-conviction petitions, Defendant Palmer came forward and admitted to a host of misconduct that he and the Defendant Officers committed in an effort to frame the Plaintiffs for a crime that they did not commit.  Defendant Palmer testified to the same during the Plaintiffs' post-conviction evidentiary hearing.

53.    Following the Plaintiffs' evidentiary hearing, on March 19, 2013, the Circuit Court granted Plaintiffs' post-conviction petitions, overturning their convictions, vacating their sentences and granting them new trials.  That decision was affirmed on appeal.

## Rockford's Code of Silence

54. The constitutional injuries that Plaintiffs suffered were caused by the policies and practices of the Rockford Police Department.

55. In particular, there was a "code of silence" that permeated the Department. As Defendant Palmer testified, that code meant "[k]eep your mouth shut and do what you're told." In other words, Rockford police officers are taught to look the other way and acquiesce when fellow officers are committing misconduct; under no circumstances were officers to provide adverse information against a fellow officer.

56. As a result of that code of silence, Rockford police officers are not properly supervised or disciplined in any way. To the contrary, officers are allowed to continue to commit misconduct with impunity, including the type of misconduct at issue here.

57. Indeed, within the Rockford Police Department, there was a policy and practice of taking short cuts to solve criminal investigations, including by fabricating statements, coercing witnesses and withholding exculpatory and impeachment evidence.

58. This policy and practice repeated itself in numerous criminal investigations conducted by the Rockford

Police Department. As Defendant Palmer has testified, that misconduct was widespread.

59. Nonetheless, and despite notice to (and often involvement of) policymakers in the above-described unconstitutional policies and practices, there was no effort to rectify any such misconduct. The City of Rockford and officials within the Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiffs' ongoing injuries.

60. The policies and practices described in the foregoing paragraphs were consciously approved by City of Rockford policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

61. Those policies and practices were the proximate cause of the constitutional injuries that Plaintiff sustained, as described more fully above.

62. Moreover, The City's failure to train its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Plaintiffs in this case. Constitutional violations such as

14

occurred in this case are encouraged and facilitated as a result of the City's practices and *de facto* policies, as alleged above.

### Plaintiffs' Damages

63.  Plaintiffs spent over a decade in prison for a crime that they did not commit.

64.  During their wrongful incarceration, the Plaintiffs were stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right.  They missed out on the ability to raise their children, share holidays, births, funerals and other life events with loved ones, and the fundamental freedom to live one's life as an autonomous human being.

65.  As a result of their wrongful incarcerations, Plaintiffs must now attempt to rebuild their lives all without the benefit of a decade of life experience that ordinarily equip adults for that task.

66.  Plaintiffs have suffered tremendous damage, including physical sickness and injury and emotional damages, all proximately caused by Defendants' misconduct.

### Count I – Due Process

### 42 U.S.C. § 1983

67.  Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

68.   As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other named and unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiffs of their constitutional right to a fair trial.

69.   In the manner described more fully above, the Defendant Officers deliberately withheld exculpatory and impeachment evidence, fabricated false statements, reports and other evidence, and suborned perjury, thereby misleading and misdirecting the criminal prosecutions of Plaintiffs.  Absent this misconduct, the prosecutions of Plaintiffs could not and would not have been pursued.

70.   The Defendant Officers' misconduct also directly resulted in the unjust criminal convictions of Plaintiffs, thereby denying them their constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

71.   As a result of this violation of his constitutional right to a fair trial, Plaintiffs suffered injuries, including, but not limited to, physical sickness and injury, and emotional distress, as is more fully alleged above.

72. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

73. The misconduct by the Defendant Officers described in this Count was undertaken pursuant to the policy and practice of the Rockford Police Department, which Plaintiffs were the victims of, and his injuries were proximately caused by a policy and practice on the part of the City of Rockford to pursue and secure false convictions through profoundly flawed investigations as described more fully above.

74. Specifically, during the relevant time period, a group of Rockford police officers, including some or all of the Defendant Officers herein, engaged in a systematic pattern of coercion, fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the investigative process.

75. This institutional desire to close cases through unconstitutional tactics regardless of actual guilt or innocence, in order to enhance police officers' personal standing in the Department, was known to the command personnel, who themselves participated in the practice.

76. The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Rockford Police Department during the time period at issue, were able to

exist and thrive because municipal policymakers with authority over the same either concurred with the practices or exhibited deliberate indifference to the problem.

77. The widespread practices described in the preceding paragraphs were allowed to take place because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment. Indeed, the Department's system for investigating and disciplining police officers accused of the type of misconduct that befell Plaintiffs was, and is, for all practical purposes, nonexistent. Indeed, the Department maintained a "code of silence" that effectively eliminated any form of accountability, discipline or oversight.

78. Rockford police officers who manufactured criminal cases against individuals such as Plaintiffs had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses, such as the Defendant Officers' misconduct at issue in this case.

## Count II - Failure to Intervene

## 42 U.S.C. § 1983

79. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

80.   In the manner described above, during the Constitutional violations described above, one or more of the Defendant Officers (including as-yet-unknown Police Officers) stood by without intervening to prevent the misconduct.

81.   As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiffs' constitutional rights, Plaintiffs suffered damages, including physical sickness and injury, as well as emotional distress.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

82.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

83.   The Defendant Officers' misconduct described in this Count was undertaken pursuant to Rockford's policy and practice in the manner described in preceding paragraphs.

### Count III - Conspiracy

### 42 U.S.C. § 1983

84.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

85.   Prior to arresting Plaintiffs, the Defendant Officers reached an agreement amongst themselves to frame Plaintiffs for the crime, and to thereby deprive Plaintiffs of

their constitutional rights, all as described in the various Paragraphs of this Complaint.

86.    In addition, before and after Plaintiffs' conviction, each of the Defendant Officers further conspired, and continue to conspire, to deprive Plaintiffs of exculpatory materials to which they are lawfully entitled and which would have led to their more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

87.    In this manner, the Defendant Officers, acting in concert with each other and with other unknown co-conspirators, including persons who are and who are not members of the Rockford Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

88.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

89.    As a direct and proximate result of the illicit prior agreement referenced above, Plaintiffs rights were violated, and they suffered physical injury and sickness, and severe emotional distress and anguish, as is more fully alleged above.

90.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

20

91.   The Defendant Officers' misconduct described in this Count was undertaken pursuant to the policy and practice of the Rockford Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for Rockford with final policymaking authority.

### Count VII - Supervisor Liability

### 42 U.S.C. § 1983

92.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

93.   The constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct, which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, including but not limited to Defendants Iasparro, Lindmark and Glover, such that these officers personally knew about, facilitated, approved, and/or condoned this pattern and practice of misconduct, or least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

94.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

95.   The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

96.   As a result of this violation, Plaintiffs suffered injuries, including but not limited to physical sickness and injuries, and emotional distress, as is more fully alleged above.

97.   Absent knowing participation by the command personnel responsible for supervising the Defendant Officers, the misconduct alleged in this Complaint could not have occurred.

### Count VIII – Malicious Prosecution

### 42 U.S.C. § 1983[1]

98.   Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

99.   Defendant Officers caused Plaintiffs to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiffs' favor in a manner indicative of their innocence.

---

[1]   Plaintiffs are including this claim in his First Amended Complaint to preserve it in the event that the Seventh Circuit overturns its ruling in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001).

100. The Defendant Officers accused Plaintiffs of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

101. Statements of the Defendant Officers regarding Plaintiffs' alleged culpability were made with knowledge that said statements were false and perjured.  In so doing, the Defendant Officers fabricated evidence and withheld exculpatory information.

102. The misconduct in this Count violated Plaintiffs' rights under the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

103. The misconduct described in this Court was undertaken with malice, willfulness, and reckless indifference to the rights of others.

104. The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

105. As a result of this misconduct, Plaintiffs sustained, and continue to sustain, injuries including physical injury and sickness, and emotional pain and suffering.

WHEREFORE, Plaintiffs, LUMONT JOHNSON and ANTHONY ROSS, respectfully request that this Court enter judgment in their favor and against Defendants, CITY OF ROCKFORD, DOUG PALMER, DOMINIC IASPARRO, JOSEPH STEVENS, JAMES RANDALL, SCOTT MASTROIANNI, THEO GLOVER, KURT WHISENHAND, TORRY REGEZ, GREGORY LINDMARK, AND UNKNOWN EMPLOYEES OF THE CITY OF ROCKFORD, awarding compensatory damages, costs, and attorneys' fees, as well as punitive damages against all individual defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs, LUMONT JOHNSON and ANTHONY ROSS, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:


s/ Gayle Horn
Attorneys for Lumont Johnson and
Anthony Ross


Arthur Loevy
Jon Loevy
Gayle Horn
Roshna Bala Keen
Elliot Slosar
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900