IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Lumont Johnson & | ) | |
| Anthony Ross, | ) | 15 CV 50064 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Iain D. Johnston |
| City of Rockford, et al., | ) | |
| Defendants. | ) | |

| Tyjuan Anderson, | ) | |
| Plaintiff, | ) | 15 CV 50065 |
| | ) | |
| v. | ) | |
| | ) | Judge Iain D. Johnston |
| City of Rockford, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants' Joint Motion to Compel (Dkts. #177 and #156) is granted. Plaintiffs' Motion to Compel Discovery from Individual Defendants' Expert Witness (Dkts. #215 and #195) is granted. The information sought by the Defendants' motion and the documents sought by the Plaintiffs' motion must be provided by April 16, 2018. Discovery remains closed.

## I. APPLICABLE LAW

The parties have filed dueling motions to compel relating to two expert witnesses. Defendants have filed a motion to compel to require Plaintiffs' expert, Wilfred Daniel Libby, to identify who typed portions of his expert report. Not to be outdone, Plaintiffs filed a corresponding motion to compel the Individual Defendants to produce two documents that were provided to their expert, Michael D. Lyman, by Individual Defendants' counsel. The Court grants both motions. But to forestall any future motions resulting from this order, the Court reiterates that discovery remains closed. Attempts to reopen discovery in light of this ruling will not be allowed.

A straight-forward application of Rule 26(b)(4) resolves both motions. In relevant part, as amended in 2010, Rule 26(b)(4) provides the following:

> (B) *Trial-Preparation Protection for Draft Reports or Disclosures.* Rules 26(b)(3)(A) and (B) protect *drafts* of any reports or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.
> (C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witness.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, *except to the extent that the communications*:
> > (i) relate to compensation for the expert's study or testimony;
> > (ii) *identify facts or data that the party's attorney provided that the expert considered in forming the opinions to be expressed*; or
> > (iii) *identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.*

Fed. R. Civ. P. 26(b)(4)(B), (C) (emphasis added). A plain reading of the rule establishes three important points. First, subsection (B) applies to *drafts* of reports and disclosures. The protection from disclosure does not apply to the final report or disclosure. By definition, a final document, be it a report or disclosure, is not a *draft*. *See* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/draft (last visited Mar. 26, 2018) (defining "draft" as a preliminary sketch, outline, or version); *see also* BOUVIER'S LAW DICTIONARY 939 (1914) (defining "draft" as "the rough copy of a legal document"). Final documents are fodder for discovery.

Second, the broad protections for communications between *an attorney* and the *expert witness* captured by subsection (C) are limited by specified exceptions. Accordingly, by definition, if a party is seeking protection under subsection (C), the communication could only be protected if (1) it were made by an attorney, and (2) it does not fall within one of the three specified exceptions.

Third, there is a distinction between subsections (C)(ii) and (C)(iii). Subsection (C)(ii) exempts from protection *facts or data* the expert *considered* in forming the opinions. In contrast, subsection (C)(iii) exempts from protection *assumptions* the expert *relied on* in forming the opinions. So subsection (C)(ii) exempts from protection facts or data considered, but subsection (C)(iii) exempts from protection assumptions relied upon.

The 2010 amendments to Rule 26 added the protection for drafts of reports as well as communications between attorneys and experts. Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment ("Rule 26(b)(4)(B) is added to provide work-

product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports and disclosures. . . Rule 26(b)(4)(C) is added to provide work-product protection for attorney-expert communications. . ."). But the protection for attorney-expert communications does not apply to the extent the lawyer and the expert communicate about matters that fall within the three exceptions. *Id.* Consequently, discovery is permitted to identify facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed. *Id.* Likewise, discovery is permitted as to attorney-expert communications to identify any assumptions that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed. *Id.* Additionally, the 2010 amendments to Rule 26 did not alter the definition of "considered." *In re Benicar Products Liab. Lit.*, 319 F.R.D. 139, 216 n.3 (D. N.J. 2017). As a result, after the 2010 amendments, "theories or mental impressions" might be protected, but everything else is fair game. *Yeda Research & Dev. Co., Ltd. v. Abbott GmbH & Co. KG,*, 292 F.R.D. 97, 105 (D.D.C. 2013).

Case law has defined the terms "considered" and "relied upon." The term "considered" is broader than the term "relied upon." *Pertile v. GM. LLC*, No. 15 CV 518, 2017 U.S. Dist. LEXIS 141088, at *20 n.9 (D. Colo., Aug. 31, 2017) *citing Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005); *Deal v. Louisiana*, No. 11-743, 2013 U.S. Dist. LEXIS 122504, at *14-17 (M.D. La. Aug. 28, 2013). In the context of Rule 26, "considered" is a term of art:

> An expert must disclose the materials given to him to review in preparation for testifying, "even if in the end he does not rely on them in formulating his expert opinion, because such materials often contain effective ammunition for cross-examination." The term "considered" invokes a "broader spectrum of thought than the phrase 'relied upon' which requires dependence on the information." . . . While "consider" is to be given a broad meaning, the Seventh Circuit suggests that "considered" applies to that information an expert actively reviews and contemplates, and then chooses not to rely upon.

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 840 F. Supp. 2d 1072, 1080 (N.D. Ill. 2012) (citations omitted).

Likewise the term "relied on" possesses a specific meaning. In this context, "relied upon" means that the expert's opinion depended upon the assumptions provided by the attorney. *Pertile v. GM. LLC*, 2017 U.S. Dist. LEXIS 141088, at *20 n.9 *citing Fid. Nat'l Title Ins. Co.*, 412 F.3d at 751.

**A. Defendants' Motion to Compel**

At the Plaintiffs' expert deposition, the following colloquy occurred between the Defendants' attorneys, the Plaintiffs' attorneys and the expert, Mr. Libby:

By Mr. Smith [one of the defense counsel]:
Q: Okay. And did you type up this report yourself?
Mr. Slosar [one of the Plaintiffs' counsel]: Objection. I believe that that – obviously you can delve into the report process, but I think that that specific question and the collaboration between Mr. Libby and our firm would delve into the work product privilege.
Mr. Devine [one of the defense counsel]: Well, you just answered the question.
Mr. Smith: Yeah, you just answered the question.
By Mr. Smith:
Q: So you didn't actually type this up yourself, sit there and type like this report?
Mr. Greenberg [one of the other Plaintiff's counsel]: I'm going to object –
By Mr. Smith:
Q: Is that correct?
Mr. Greenberg: (Continuing) – also. I don't – I don't think the – how the report is drafted and the various drafts is discoverable anymore.
Mr. Smith: I didn't ask him what the draft is. I'm asking if he prepared this report.
Mr. Greenberg: But that would get into how the drafts and how the report was prepared.
By Mr. Smith:
Q: Okay. Go ahead and answer the question.
A: I – sorry.
Mr. Slosar: I'm instructing you not to answer that question based on the work product privilege.
The Witness: Okay.

\*     \*     \*

Q: Okay. And so this was prepared by plaintiffs' counsels?
A: No.
Mr. Slosar: Objection. I will allow for Mr. Libby to answer whether he drafted this report. As to the underlying interaction between Mr. Libby and any of the counsel, that is protected by the work product privilege.
Mr. Mogbana [one of the other defense counsel]: So I'm sorry. Let me just understand. Are you withdrawing your –
Mr. Slosar: I'm withdrawing the initial objection.
Mr. Mogbana: Okay.
Mr. Slosar: Mr. Libby can answer the question as to whether he typed the report.
Mr. Mogbana: Okay.

        The Witness: I typed the report, sir.
        By Mr. Smith:
        Q: So you typed this report?
        A: I typed a good majority of this report.
        Q: But not all of it?
        A: I'm sorry?
        Q: But not all of it?
        Mr. Slosar: And I object to that question and will instruct Mr. Libby not to answer that specific question as to the work product privilege.
        By Mr. Smith:
        Q: So you did not type this report in its entirety?
        Mr. Slosar: The same objection. Instructing you not to answer.
        The Witness: Okay.
Dkt. #177-1, p. 13- 16.

        Based upon the instruction not to answer who typed portions of Mr. Libby's report, the Defendants brought their motion to compel. The Plaintiffs filed their response in opposition to the motion. And the Court heard arguments on the motion. At the argument, the Court ordered the Plaintiffs' counsel to provide the Court *in camera* with a copy of Mr. Libby's report, highlighting those portions that were not typed by Mr. Libby. The highlighted report is illuminating.

        The highlighted report establishes that Mr. Libby accurately testified that he typed a majority of the 40-page report. But the highlighted report also establishes that a person other than Mr. Libby typed at least four pages of the "Statement of Facts," and, as a result, almost half of factual section was typed by another person. In the portion of the report regarding Mr. Libby's first opinion regarding whether the "investigators failed to follow accepted police practices and exhibited 'tunnel vision,'" only about one page was typed by a person other than Mr. Libby. That would be about 15%. As to Mr. Libby's second opinion regarding whether a "reasonable police officer would have coerced witnesses into making statements by threatening or physically assaulting them," a person other than Mr. Libby typed almost the entire opinion. Mr. Libby typed only one paragraph relating to this opinion. As to Mr. Libby's third opinion regarding whether "[p]roper policing requires that officers report all investigative information – good or bad – to the prosecutor," somebody other than Mr. Libby typed about a page – essentially half of that report's discussion of the topic. The remainder of the report, which runs another thirteen pages and contains three other opinions, was typed by Mr. Libby.

        The sole issue argued in the Defendants' motion to compel is whether the Plaintiffs should be forced to identify who typed those portions of Mr. Libby's report that he admittedly did not type. The Defendants are not seeking to strike the report.[1]

---

[1] Unfortunately, a plethora of cases exist addressing the pernicious practice of attorneys

The Plaintiffs cite no cases that protect the identity of the typist of an expert

commandeering the preparation of expert reports. Without doubt, counsel can assist in the preparation of the expert report. *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942 (E.D. Mich. 2014); *Crowley v. Chait*, 322 F. Supp. 2d 530, 543 (D. N.J. 2004). But when counsel's assistance becomes so intrusive and overwhelming, it cannot be fairly said that the report was "prepared" by the expert. *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 578 (W.D. Tenn. 2009). Consequently, improper expert reports subject to being stricken include reports ghost-written from whole-cloth by counsel, altered or prepared by counsel merely to appease counsel or because of counsel's intimidation or undue influence, or that merely express the opinions of the lawyers who hired the expert. *McClellan v. I-Flow Corp.*, 710 F. Supp. 2d 1092, 1118 (D. Or. 2010). Determining whether counsel crosses the line separating permissible assistance from improper participation in the experts' report writing requires a fact-specific inquiry. *Numatics*, 66 F. Supp. 3d at 942. Based upon this fact-specific inquiry (which could not be accomplished without knowing who typed the report and counsel's input) some courts have declined to strike expert reports. *See, e.g., Paliwoda v. Showman*, No. 12-2740, 2013 U.S. Dist. LEXIS 158707, at *13 (D. Kan. Nov. 6, 2013) (expert did not have secretary so report typed by counsel who mailed expert report, which was adopted by expert after his review); *Abernathy v. Union Pac. R.R. Co.*, No. 08 CV 4187, 2011 U.S. Dist. LEXIS 41931, at *15-16 (E.D. Ark. Apr. 13, 2011) (final form of report sent by counsel to expert, who reviewed, approved and signed it after reviewing and considering materials identified in report); *Isom v. Howmedica, Inc.*, No. 00 C 5872, 2002 U.S. Dist. LEXIS 9116, at *2-3 (N.D. Ill. May 20, 2002) (attorney prepared initial draft of report based on extensive discussions with expert regarding findings after expert reviewed relevant materials, and expert amended final draft, which incorporated amendments). In contrast, other courts have struck expert reports that were essentially drafted by counsel. *See, e.g., McClellan v. I-Flow Corp.*, 710 F. Supp. 2d at 1124-25 (counsel was more than "mere conduit," instead counsel created the test concept, provided raw data, selected agent to perform underlying work, analyzed his data against experts and encouraged expert to do the same, identified test subjects and conferred with expert to "correct" issues in report); *Numatics*, 66 F. Supp. 3d at 943-45; *Stein v. Foamex Int'l, Inc.,* No. 00-2356, 2001 U.S. Dist. LEXIS 12211, at *16 (E.D. Pa. Aug. 15, 2001) (expert played no substantial role in preparing report); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, No. 96 MD 1122, 2000 U.S. Dist. LEXIS 1318, at *2-3 (W.D. Mich. Feb. 8, 2000) (extreme similarity between expert's purported report and report prepared by counsel in different case established that report was prepared by counsel not expert). Some courts have attempted to warn counsel as to the outer limits of their participation. *See, e.g., In re Asbestos Prods. Liab. Litig.*, 714 F. Supp. 2d 535, 543 (E.D. Pa. 2010) (although counsel wrote report, expert testified that he agreed with its content and filed a declaration with the court stating that the report was based on personal knowledge and his professional experience); *Crowley*, 322 F. Supp. 2d at 544-45 (expert verbally provided counsel with opinions; counsel incorporated opinions into report for expert's review; and expert adopted report). Based upon this case law and a review of the highlighted final report provided for *in camera* inspection, the Court would not strike Mr. Libby's report. For purposes of Rule 26, Mr. Libby "prepared" the final report, albeit with assistance from somebody else – most likely counsel.

report.  Additionally, the Plaintiffs do not even analyze their position under the language of Rule 26(b)(4).  Instead, the Plaintiffs make a convoluted argument that they are protected from identifying the typist because doing so would somehow be equivalent to producing a draft as well as attorney-expert communications.[2]  The problems with the Plaintiffs' argument are numerous, not the least of which is that the Plaintiffs' argument violates the plain language of the Rule.

First, Mr. Libby's report is not a draft.  It is the final report, which was disclosed to the Defendants.

Second, it is a final report that contains facts or data,[3] or assumptions that the Plaintiffs' counsel[4] provided to Mr. Libby who, because the information was incorporated into the final draft, by definition, "considered" or "relied upon" this information.  Counsel cannot argue that Mr. Libby did not consider the facts or data or rely upon the assumptions when this information is contained in the final report.

Third, the Plaintiffs fail to cite even a single case holding that the identity of the typist is protected from disclosure.  Indeed, numerous cases discuss the unfortunate phenomena of counsel typing expert reports.[5]  The existence of these cases, and the absence of any cases supporting the Plaintiffs' argument, is telling.  It tells that even in those cases in which counsel authored some or all of an expert's report, counsel knew and the courts understood that the identity of the author was not protected.

Fourth, the Plaintiffs cite no authority to support their argument.  The Plaintiffs' argument is that by simply identifying the name of the person other than

---

[2] In the response memorandum, the Plaintiffs vehemently contest a suggestion "that the report was authored by Plaintiff's counsel." Dkt. #162, p. 3.  In doing so, they cite to the portions of the deposition transcript reproduced above in which not only does Mr. Libby qualify that he typed "a good majority of this report," but also that the Plaintiffs' counsel is objecting and instructing the witness not to answer pursuant to the "work product privilege." (As an aside, there is no "work-product privilege."  There is an attorney-client privilege.  And there is a work-product doctrine.  The two are distinct. *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012) ("[T]he work product doctrine [ ] 'is distinct from and broader than the attorney-client privilege.'" (quoting *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1974))).  By invoking the doctrine and referencing Rule 26(b)(4), the Plaintiffs' counsel essentially admitted to typing portions of the report.  The rule only protects from disclosure communications between the party's attorney and the witness. Fed. R. Civ. P. 26(b)(4)(C).  If a non-attorney typed portions of the report, then the Plaintiffs can seek no quarter in the protection of the rule.  Indeed, if an administrative assistant, for example, merely typed portions of the report, Mr. Libby would have testified to that without an objection and the motion to compel would never have been filed.  The jig is up.  Everyone knows who typed the portions of the report.
[3] Remember that four pages not typed by Mr. Libby were included in the "Statement of Facts" section of the report.
[4] If the Plaintiffs' counsel did not type these portions of the report, then the Plaintiffs cannot seek to invoke the protections of Rule 26(b)(4).
[5] *See* cases cited in footnote 1 *supra*.

7

Mr. Libby who typed portions of the final expert report, Rule 26(b)(4)'s protections are violated because it will disclose the interaction between Mr. Libby and the attorneys in the drafting process. To support this novel argument, the Plaintiffs cite the single case of *United States CFTC v. Newell*, 301 F.R.D. 348 (N.D. Ill. 2014). But *Newell* is not helpful for the Plaintiffs; in fact, the decision undermines their argument. Initially, *Newell* is factually different for at least two reasons. First, the defendant in *Newell* did not argue that the name of the typist (who, of course, was the attorney) could not be disclosed, and *Newell* does not even address this issue, let alone hold that the name of the typist is protected. Second, the issue in *Newell* involved whether drafts – meaning preliminary, rough versions of the expert report – were required to be disclosed. Again, at issue here is the name of the person other than Mr. Libby who typed portions of the final document. Moreover, aside from these factual distinctions, critically, *Newell* supports the proposition that when counsel physically include facts, data and assumptions into even drafts of the expert report, those portions of the drafts are not protected. Importantly, *Newell* states, "Arguably, facts, data or assumptions provided by an attorney to the expert should not be insulated from production simply because the vehicle of communication was a draft of the report or an attorney's revision to the expert's draft." *Newell*, 301 F.R.D. at 353. The *Newell* decision then found that it was not required to make that ultimate determination. *Id.*

But another court did make that ultimate determination: *United States ex rel. Wall v. Vista Hospice Care*, 319 F.R.D. 498 (N.D. Tex. 2016). In *Vista Hospice Care*, the court analyzed the interplay of the various provisions of Rule 26(b). The *Vista Hospice* court then found that protection is not afforded – even in draft reports – when counsel provide facts, data and assumptions that are cooked into the final report:

> Based on the text of Rule 26(b)(4) as well as its structure and context, and looking to the Advisory Committee's notes for guidance and support, the Court concludes that, notwithstanding Rule 26(b)(4)(B), Rule 26(b)(4)(C) and its exceptions apply to any communications between the party's attorney and the expert witness in the form of a draft expert report to the extent that portions of the draft transmitted between the attorney and the exporter either identify facts or data that the party's attorney provide and that the expert considered in forming the opinions to be expressed or identify assumptions that the party's attorney provide and that the expert relied on in forming the opinions to be expressed. . . The text, structure, and context of Rule 26(b)(4) support this conclusion.

*   *   *

[R]eading Rule 26(b)(4)(C) and its exceptions to apply to any

communications between the party's attorney and the expert witness of facts or data that the attorney provided and the expert considered or of assumptions that the attorney provide and the expert relied on – including in the form of a draft expert report transmitted between an attorney and an expert – is consistent with the structure and purpose of Rule 26(a)(2)(B) and 26(b)(4).

\* \* \*

Accordingly, reading Rule 26(b)(4) to require disclosure of a draft expert report transmitted between an attorney and an expert that identify facts, data, or assumptions provide by an attorney – even though the vehicle of communication between the attorney and the expert was a draft of a report or an attorney's revision of the expert's draft – does not undermine the purpose behind providing work-product production protection to draft reports or render Rule 26(b)(4)'s extension of work-product protection to drafts a nullity.

\* \* \*

Thus, to conclude that Rule 26(b)(4)(B) precludes the application of Rule 26(b)(4)(C) and its exceptions to any communication between the party's attorney and the expert witness in the form of a draft expert report and permits attorneys to protect from discovery facts or data considered by or assumptions relied upon by a retained expert by providing some in a draft report would be inconsistent with Rule 26(b)(4)(C)(ii)-(iii)'s exceptions to an otherwise broad application of work-product protection and the structure and purpose of Rules 26(a)(2)(B) and 26(b)(4) described above.

*Vista Hospice Care*, 319 F.R.D. at 508-09.

Moreover, the *Vista Hospice Care* court noted an important policy consideration furthered by its construction of the rules; namely, by adopting a contrary construction – as the Plaintiffs do here – would encourage counsel to ghost write expert reports. *Id.* at 509. Experts should not be attorneys' puppets who merely parrot opinions ginned up by counsel. Indeed, following the rationale of the Plaintiffs' argument, an attorney could simply take a blank computer screen, fill it with counsel's own report, hand it off to the expert for signature, and nobody – including the trier of fact – would be allowed to know this pernicious practice occurred. 6 Moore's Federal Practice, Section 26.23[5], p. 26-120.3 (Matthew

Bender 3d ed. 2016).[6]

Consequently, the Plaintiffs' entire premise for their argument fails under *Vista Hospice Care*. And the premise fails for good reason: *Vista Hospice Care*'s interpretation of Rule 26 is true to the rule's language and purpose.

As the Plaintiffs note in their own motion to compel addressed below, "the Seventh Circuit has held . . . that counsel should be afforded an opportunity to conduct expert discovery in an effort to appropriately cross-examine an expert." Dkt. #211 at p. 13 (citing *Fid. Nat. Title Ins. Co. v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 750 (7th Cir. 2005)). Not surprisingly, the Court agrees with the Seventh Circuit in that regard. The Defendants should be allowed to cross-examine the Plaintiffs' expert with the fact that somebody else typed portions of his report. Perhaps the Plaintiffs have a good reason why somebody else typed portions of Mr. Libby's report. Maybe Mr. Libby's hand was bitten by a dog, smashed in a car door or had a piano keyboard cover slammed onto it. If so, then Plaintiffs' counsel will be able to elicit that fact on redirect examination. Maybe the reason for having somebody else type portions of Mr. Libby's report is not as good. For example, maybe Mr. Libby failed to comprehend the Plaintiffs' counsels' belief of the import of certain facts, data, and assumptions, and, consequently, counsel decided to include those into the report, lest Mr. Libby not be able to testify to them. Fed. R. Civ. P. 37(c)(1). The charade regarding "preparation" of expert disclosures and reports contained in Rule 26 surely does not go so far as to allow counsel to write an expert's report – or portions of it – and then hide that fact from the jury. Cross examination will allow the jury to determine how much weight to give to Mr. Libby's opinions. *Sunbeam Prods. v. Homedics, Inc.*, 670 F. Supp. 2d 873, 883 (W.D. Wis. 2009) (allowing jury to decide weight of evidence to give to expert opinion that was assisted by counsel); *Marek v. Moore*, 171 F.R.D. 298, 302 (D. Kan. 1997) (the

---

[6] 6 Moore's Federal Practice, Section 26.23[5], p. 26-120.3 ("The better view rejects the contention that a report prepared by counsel is the report of the expert, even if the expert 'substantially' agrees with its conclusions. Even though the advisory committee note acknowledges that counsel may 'provid[e] assistance to experts in preparing the reports,' the rule does not contemplate blanket adoption of reports prepared by counsel or others, let alone equivocal adoption. Rather, the rule is intended to facilitate discovery by allowing an examination of the work of the expert. A report prepared by the expert exposes the thought process and method of the expert in advance of an oral examination. Its discipline both reduces the incentives of witnesses to present preliminary or tentative views and to tailor their opinion to an advocates' case. While others may assist in the preparation of the report, the final report must be that of the expert."); *see also* Daniel Barsky, *How Designation of Expert Witnesses Can Make or Break Privilege*, https://www.americanbar.org/groups/litigation/committees/class-actions/articles/2017/spring2017-how-designation-of-expert-witnesses-can-make-or-break-privilege.html (although Rule 26 affords protections an exception is "when an attorney becomes so involved in the drafting of the report that the attorney effectively becomes the expert").

court "would instead give opposing counsel the opportunity to cross-examine the witness. Effective cross-examination serves to expose inconsistencies of importance. It may also develop the extent to which a witness has been influenced by counsel to make changes in what he says."); 6 Moore's Federal Practice, Section 26.23[5] at 26-120.3.

By April 16, 2018, the Plaintiffs must identify the person or persons who typed those portions of Mr. Libby's expert report that he did not type.

### B. Plaintiffs' Motion to Compel

Plaintiffs' motion to compel seeks two documents withheld by the Individual Defendants.

Plaintiffs' counsel served a subpoena on the Individual Defendants' counsel seeking documents. The Individual Defendants' counsel withheld two documents from production, raising a host of procedural issues that were resolved at the hearing, but also claiming they were protected from disclosure. The first document is basically a draft of a statement of facts that would eventually be used in support of their motion for summary judgment. (At this point, a reasonable person might wonder how the information could be protected if it has now been filed with the Court.) The second document is an outline relating to a witness in the case. The Defendants' counsel characterized these documents as "roadmaps." There is no dispute that the Individual Defendants' counsel created these documents. But, more importantly, there is no dispute that Mr. Lyman "reviewed" these "roadmap" documents. Dkt. #223, p. 2. Indeed, both of these documents are enumerated on an appendix with the title "APPENDIX #1 – MATERIALS REVIEWED." Moreover, it is undisputed that at Mr. Lyman's deposition, he testified that he "considered" these documents.

As explained previously, Rule 26(b)(4)(C) provides a general protection for communications between a party's attorney and a retained expert witness, but then specifically exempts from protection three categories of documents. The category applicable here is contained in Rule 26(b)(4)(C)(ii). Communications that "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed" are not protected. Documents that are "reviewed" are documents that an expert "considered," which means they are not protected from disclosure. *Euclid Chem. Co. v. Vector Corrosion Techs.*, No. 05 CV 80, 2007 U.S. Dist. LEXIS 38720, at *13-15 (N.D. Ohio, May 29, 2007) (courts have embraced an objective test that defines considered as anything reviewed, received or read by the expert); *see also In re Benicar Products Liab. Litig.*, 319 F.R.D. at 216-18 (collecting cases discussing broad definition of "considered").

Because the outline and statement of facts were "considered" by Mr. Lyman, they are not protected. Both documents must be produced to the Plaintiffs' counsel by April 16, 2018.

11

## II. CONCLUSION

Both motions to compel are granted. The information must be provided by April 16, 2018. Again, discovery remains closed.

Date: March 27, 2018

Iain D. Johnston
U.S. Magistrate Judge